**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| RAAHKIIM BEY, | : | Case No. 3:20-cv-00106 |
| Plaintiff, | : | District Judge Walter H. Rice |
| vs. | : | Magistrate Judge Sharon L. Ovington |
| DEAN R. GRAFILO, et al., | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.  Introduction

Plaintiff Raahkiim Bey is a professional boxer currently living in Kettering, Ohio. He brings this case pro se asserting that Defendants violated his rights under federal constitutional and statutory law by failing to renew his professional boxing license originally issued by California authorities. Defendant Dean R. Grafilo is, or was, the Director of the California Department of Consumer Affairs, and Defendant Ryan Marcroft is, or was, a member of that Department's Legal Affairs Division.

Defendants Grafilo and Marcroft have filed a Motion to Dismiss Plaintiff's Complaint under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction or, alternatively, under Fed. R. Civ. P. 12(b)(3) for transfer of venue to the Eastern District of California. (Doc. No. 9). Plaintiff opposes Defendants' Motion. (Doc. Nos. 16, 17).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff has also filed a Motion for Default Judgment (Doc. No. 14), which Defendants oppose (Doc. No. 15).

## II. Plaintiff's Complaint and Attached Exhibits

Plaintiff's Complaint describes the problems he encountered when attempting to renew his professional boxing license with the California State Athletic Commission (CSAC) through the California Department of Consumer Affairs (CDCA).

In 2012, the CSAC, through the CDCA, granted Plaintiff a professional boxing license. He successfully renewed his license by mail in 2014 and 2015. But when he sought to renew it by mail in 2016, he received no response from the CSAC or the CDCA. He re-contacted these California authorities in 2018 expressing his concern about not receiving his renewed boxing license. (Doc. No. 1, PageID Nos. 5, 41). He explained that he had sent two money orders to them (for $30 and $35) in 2016 and that both had been cashed. He again received no response from California. *Id*. at 5.

In February 2019 he received two letters from the U.S. Postal Service confirming that his two money orders had been cashed in December 2016. *Id*. at 42, 44. Later that month, or in early March 2019, Plaintiff sent several documents directly to CDCA Director Defendant Grafilo. One document, a "Notice of Inquiries Nunc Pro Tunc," posed 21 questions. (Doc. No. 1, *PageID* No. 47 (capitalization omitted)). Some of the questions sought information about the responses to his boxing-license renewal attempt in 2016, including whether "Respondents" cashed the $35 money order he sent them on December 16, 2016. *Id*. at 48-51. After each question, Plaintiff noted, "If no other answer is provided, Respondents admit the answer is: 'Yes'." *Id*. The additional

2

documents he sent were copies of receipts, a cover letter, his "Affidavit in Support of Notice of Inquiries," a "Notice to Respond," and a "Notice of Correction Nunc Pro Tunc." *Id*. at 45-46, 52-57 (capitalization omitted).  This time he received a response.

Defendant Ryan Marcroft's name appears on a CDCA letter mailed to Plaintiff in April 2019.  The letter identifies Marcroft as the CDCA's "Deputy Director, Legal Affairs." *Id*. at 61.  The body of the letter states in full:

> We serve as the general legal counsel to the California State Athletic Commission (Commission).  The Commission received your "Notice of Inquiries Nunc Pro Tunc" and forwarded it to us for appropriate response.
>
> The Commission objects to jurisdiction.  The "Notice of Inquiries Nunc Pro Tunc" constitutes a legal nullity as it is not authorized by any recognized court or tribunal with competent jurisdiction and is, therefore, being returned to you without response.
>
> We are now closing our file on this matter.  In closing, we wish to thank you for your interest in the important work of the Commission.

*Id*.

Plaintiff's Complaint advances six lengthy claims for relief.  The nub of each can be condensed and paraphrased into the following:

1. Defendants continue to hold Plaintiff's monetary property with the intent to deprive him of his Fourth Amendment right to be secure against unreasonable seizure of property.

2. Defendants conspired to seize the money orders he purchased from the U.S. Postal Service for the purpose of converting them to CDCA's use in violation of 18 U.S.C. § 241 in order to deprive him of his right to be free from involuntary servitude in violation of the Thirteenth Amendment.

3. Defendants continue to withhold his monetary property—without any explanation or procedure to contest this—with the intent to infringe his right of property and due process of law in violation of the Fourteenth Amendment.

3

4. Defendants engaged in a scheme utilizing the U.S. Postal Service and mail by seizing money orders he had purchased with a VISA card in order to deprive him of the right to be free from unreasonable seizure of monetary property in violation of 18 U.S.C. § 1341, the federal mail fraud statute.

5. Defendants engaged in a scheme utilizing the U.S. Postal Service and mail by seizing money orders he had purchased with a VISA card in order to deprive him of the right to be free from unreasonable seizure of monetary property in violation of 18 U.S.C. § 1343, the federal wire fraud statute.

6. Defendants seized the money orders he had purchased from the U.S. Postal Service with a VISA card for purpose of converting them to the CDCA's use with intent to deprive him of his monetary property and trespass against his possession of the same. By this conduct, Defendants committed the tort of conversion.

(Doc. No. 1, PageID 6-21). Plaintiff seeks an award of punitive damages totaling $186,420.00 and additional declaratory and injunctive relief.

## III. Default Judgment

On July 14, 2020, Plaintiff filed a Motion for Default Judgment arguing that Defendants had not filed an Answer and were therefore in default because service of summons and a copy of his Complaint occurred on June 1, 2020. (Doc. No. 14).

In response to Plaintiff's Complaint, Defendants filed their presently pending Motion to Dismiss on July 16, 2020. This, rather than filing an Answer, was permissible. *See* Fed. R. Civ. P. 12(b).

Defendants contend that default judgment is unwarranted because they timely filed their Motion to Dismiss. They reason that under California law, service of summons was completed on June 16, 2020, when they (or their agent) signed and returned the Notice and Acknowledgment of Receipt. (Doc. No. 15, PageID 185 (applying Cal. Code Civ. Pro. § 415.30(c)). They calculate that the 21 days they had to respond ended on July 7,

4

2020.  They concluded that because they filed their Motion to Dismiss on July 6, 2020, it was timely filed and they never were in default.

Plaintiff did not file a Reply in support of his Motion for Default Judgment.  He consequently has not challenged Defendants' reasoning.  Without a meaningful conflict between the parties over the timeliness of Defendants' Motion to Dismiss, Defendants are not in default and default judgment is not appropriate.

Additionally, assuming the opposite—*i.e.*, that Defendants' Motion to Dismiss is untimely—does not assist Plaintiff because he did not seek an entry of default as required by Fed. R. Civ. P. 55(a) before filing his Motion for Default Judgment.  *See O.J. Distrib., Inc. v. Hornell Brewing Co.*, 340 F.3d 345, 352-53 (6th Cir. 2003); *Fox v. United States Postal Service*, No. 19-1450, 2019 WL 8619622, at *3 (6th Cir. 2019).  There also remains the issue of whether or not his Complaint raises a plausible claim for relief without which he is not entitled to a default judgment.  *See Jackson v. Correctional Corporation of America*, 564 F.Supp.2d 22, 27 (D.D.C. 2008) ("In other words, 'a default judgment cannot stand on a complaint that fails to state a claim.'" (citation omitted)).

Accordingly, Plaintiff's Motion for Default Judgment lacks merit.

**IV.   Personal Jurisdiction**

Defendants contend that this Court lacks personal jurisdiction over them and, therefore, dismissal of Plaintiff's Complaint is warranted under Fed. R. Civ. P. 12(b)(2).

Plaintiff maintains that this Court has personal jurisdiction over Defendants because each has the minimum contacts needed to satisfy Ohio's long-arm statute and the Due Process Clause of the Fourteenth Amendment.

5

### A. Rule 12(b)(2)

Rule 12(b)(2) of the Federal Rules of Civil Procedure permits dismissal of a complaint for lack of personal jurisdiction.  Plaintiff bears the burden of demonstrating personal jurisdiction exists over Defendant Eakins.  *See Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003).  Because no evidentiary hearing has been held concerning personal jurisdiction, Plaintiff "'need only make a prima facie showing of jurisdiction.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002) (quoting *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir. 1996)).  Plaintiff can accomplish this by "'establishing with reasonable particularity sufficient contacts between [Defendants and Ohio] to support jurisdiction.'"  *Id.* (quoting *Provident Nat'l Bank v. California Fed. Savings Loan Ass'n,* 819 F.2d 434, 437 (3rd Cir. 1987)).

Where the parties' asserted facts diverge, the Court credits the plaintiff's version and declines to consider a defendant's contrary version.  *See id.*  Without an evidentiary hearing, the Court "consider[s] pleadings and affidavits 'in a light most favorable to Plaintiffs....' "  *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting, in part, *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)).

### B. Discussion

"[A] two-step inquiry … determine[s] whether a federal district court sitting in a diversity-of-citizenship case can exercise personal jurisdiction over a defendant: (1) whether the law of the state in which the district court sits authorizes jurisdiction, and (2) whether the exercise of jurisdiction comports with the Due Process Clause." *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006).

Defendants contend that Plaintiff cannot satisfy any of the Ohio's long-arm statute's subsections, Ohio Rev. Code § 2307.382(A)(1)-(9).  Plaintiff responds by quoting the "transacting any business" subsection, which provides, "'A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the persons:

(1) transacting <u>any</u> business in this state.'"

(Doc. No. 16, PageID 202 (quoting Ohio Rev Code § 2307.382(A)(1) (Plaintiff's emphasis))).  Plaintiff argues that this statute extends personal jurisdiction to the constitutional limits set by the Due Process Clause as recognized in *R.L. Lipton Distributing Co. v. Dribeck Importers, Inc.,* 811 F.2d 967, 969 (6th Cir. 1987) and *In-Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220, 224 (6th Cir. 1972).

Plaintiff's argument, however, relies on case law in place before the Ohio Supreme Court determined that Ohio's long-arm statute does not extend to the limits of the Due Process Clause.  *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 638 N.E.2d 541, 545 n.1 (1994).  The U.S. Court of Appeals for the Sixth Circuit adheres to *Goldstein*. *See Kroger Co. v. Malease Foods Corp*., 437 F.3d 506, 513 (6th Cir. 2006).  And Plaintiff must therefore make a prima-facie showing that Defendants' contacts satisfy both Ohio's long-arm statute and the Due Process Clause.  *See Brunner*, 441 F.3d at 465.

Plaintiff asserts that personal jurisdiction over Defendants is established under Ohio's long-arm statute.  He follows this assertion with the following quote from *Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985):

Jurisdiction in these circumstances may not be avoided merely because the

7

> defendant did not *physically* enter the forum State. Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. So long as a commercial actor's efforts are "purposefully directed" toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

(Doc. No. 16, PageID 205 (quoting *Burger King*, 471 U.S. at 476 (Plaintiff's italics))).

This passage helps Plaintiff only a little by confirming that Defendants may not avoid this Court's exercise of personal jurisdiction based on their lack of physical presence in Ohio. Beyond that—and *Burger King's* additional directives—it remains to be seen whether Plaintiff has made a prima facie showing of personal jurisdiction over Defendants.

Plaintiff turns his attention mainly to the federal component of personal jurisdiction. He contends that the due-process requirements of the Fourteenth Amendment are satisfied because Defendants accepted his payments totaling $190 (from November 21, 2012 to May 27, 2015) in exchange for three separate professional boxing licenses. He points out that Defendant Marcroft, at the behest of Defendant Grafilo, "purposefully directed 'an appropriate response' on DCA letterhead via FedEx toward [P]laintiff that he (Defendant Marcroft) would essentially do nothing to assist in resolving the matter elucidated within the certified mail (i.e., [Plaintiff's] Cover Letter, Notice of Inquiries, Affidavit with exhibits attached, and Notice of Correction)." (Doc. No. 16, PageID 206). Because Plaintiff focuses on satisfying the Due Process Clause, the federal

8

aspect of personal jurisdiction takes center stage.

The broad due-process issue is whether Plaintiff has made a prima facie showing that each Defendant has sufficient minimum contacts with Ohio "so as not to offend traditional notions of fair play and substantial justice." *Gerber v. Riordan*, 649 F.3d 514, 518 (6th Cir. 2011) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). When, as in the present case, a plaintiff seeks to invoke a court's specific jurisdiction over a nonresident defendant, the inquiry "focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014) (citations omitted). To this resolve this inquiry, the oft-quoted triple header from *Southern Machine Co. v. Mohasco Industries, Inc.* applies:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

401 F.2d 374, 381 (6th Cir. 1968); *see Conn v. Zakharov*, 667 F.3d 705, 713 (6th Cir. 2012).

"[P]urposeful availment exists if the defendant created a 'substantial connection' with the forum state by engaging in 'significant activities within [the] State,' or by creating 'continuing obligations' to residents in that state." *MAG IAS Holdings, Inc. v. Schmückle*, 854 F.3d 894, 900 (6th Cir. 2017) (quoting, in part, *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985)) (other citations omitted). "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on

9

intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286. Reliance on a "defendant's 'random, fortuitous, or attenuated contacts'…" fall short of the necessary contacts. *Id.* (citation omitted).

Neither the factual allegations Plaintiff raises in his Complaint nor the information presented in his Exhibits demonstrate that Defendants Grafilo or Marcroft intentionally created a substantial connection with Ohio. Plaintiff's facts and evidence show that in 2012, he first contacted the CSAC in 2012 by mailing it his application for a professional boxing license along with his and payment. The fact that CSAC, through the CDCA, issued him a professional boxing license was a response to the contact Plaintiff initiated in California. There is no indication, moreover, in Plaintiff's facts and evidence that any California department, agency, or official—including Defendants Grafilo and Marcroft— initiated any contact with Ohio or with Plaintiff in Ohio in 2012. Similarly, when Plaintiff renewed his professional boxing license in California in 2014 and 2015, the issuances of his renewed license were in response to contacts (his renewal applications and payments) he initiated with authorities in California, rather than the reverse.

Plaintiff's Complaint and Exhibits do not reveal any conduct by Defendants Grafilo and Marcroft in Ohio. Their only connection with Ohio appears to be a single letter they mailed to Plaintiff in 2019. But this letter responded to the information Plaintiff had sent to them—namely, his Cover Letter, Notice of Inquiries, Affidavit with exhibits attached, and Notice of Correction. Accepting as true that this single contact occurred and that it injured Plaintiff in some way, these facts show only a random or attenuated contact with Ohio and fail to show that Defendants Grafilo or Marcroft had a

substantial connection with Ohio. Further, if Defendants' single contact with Plaintiff is stretched into a relationship between them, this "'relationship…, standing alone, is an insufficient basis for jurisdiction.'" *Schmückle*, 854 F.3d at 900 (quoting *Walden*, 571 U.S. at 286)). "Plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285. And, "[t]he use of interstate facilities such as the telephone and mail is a 'secondary or ancillary' factor and 'cannot alone provide the minimum contacts required by due process.'" *Holley-Adkins v. Holley*, 492 F.Supp.2d 776, 781 (S.D. Ohio 2005) (Rice, J) (quoting *Reynolds v. Intern'l Am. Athletic Federation*, 23 F.3d 1110, 1119 (6th Cir. 1994)).

For the above reasons, Plaintiff has not made a prima facie showing that Defendants Grafilo or Marcroft had a substantial connection with Ohio such that he purposefully availed himself of the privilege of acting in, or causing a consequence in, Ohio.

Next, *Southern Machine* requires Plaintiff to present facts and evidence sufficient to reveal, as a prima facie matter, that his claims "arise from" Defendants' activities in Ohio. *See Southern Machine*, 401 F.2d at 381. To accomplish this, those contacts must be "related to the operative facts of the controversy." *Schmückle*, 854 F.3d at 903 (quoting *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) ). Although this is a "lenient standard," *id*., Plaintiff's operative facts and evidence fall short. Defendants Grafilo's and Marcroft's activities occurred in California where one or both wrote the 2019 letter and placed it in the overnight (FedEx) mail. Assuming, in Plaintiff's favor, that either Defendant was responsible for cashing and retaining Plaintiff's 2016 boxing-license

11

renewal fee without sending him a renewed license, these activities occurred in California, not Ohio. Plaintiff's claims are therefore based on operative facts arising from Defendants' activities in California, not Ohio.

The bottom line is that Plaintiff's facts and evidence do not amount to a prima facie satisfaction of the purposeful availment and "arising-from" prongs of *Southern Machine*, 401 F.2d at 381. Consequently, the exercise of personal jurisdiction in this Court over Defendants Grafilo and Marcum is not compatible with the Due Process Clause.[2]

## V. Venue

Defendants contend that dismissal of this case is warranted due to improper venue. Defendants alternatively seek a transfer of venue to the U.S. District Court for the Eastern District of California, if the Court finds it would be in the interest of justice.

Plaintiff asserts that venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b)(2). He reasons that he effected proper service on Defendants in California, and he may consequently bring a diversity action against them in the judicial district where he resides (here, in the Southern District of Ohio).

Section 1391(b)(2) addresses venue generally: "A civil action may be brought in … a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated."

---

[2] Because personal jurisdiction is not proper under the Due Process Clause, "it is unnecessary to analyze jurisdiction under the state long-arm statute …." *Conn*, 667 F.3d at 711-12.

Plaintiff's reliance on § 1391(b)(2) is misplaced because a substantial part of the events described in his Complaint and evidence occurred in California, not in the Southern District of Ohio. As discussed above, *supra*, § IV(B), the events involving Defendants primarily occurred in California. Plaintiff's facts and evidence show that he initiated contact with California authorities in California concerning the renewal of his professional boxing license. There is no indication that California authorities, including Defendants, reached into Ohio to solicit business from Plaintiff or to interact with him. Defendants' 2019 letter was a response to documents Plaintiff sent to them in California. Defendants explain, moreover, that a boxing licensed issue by CSAC applies only to boxing matches in California. Plaintiff has not refuted this or provided contrary information. Additionally, assuming Defendants or someone else in California failed to renew Plaintiff's boxing license and retained his renewal payments, those acts occurred in California. The withheld license and retained money would be in California. Accordingly, Plaintiff has not shown that venue of this action in Ohio is proper under § 1391(b)(2).

Plaintiff grounds his argument—that he can choose venue of this diversity-jurisdiction case where he resides—on the following quote from *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 468 (1962) (Harlan, J. dissenting): "In an ordinary diversity suit, for example, a plaintiff may bring suit in the judicial district where he resides. 28 U.S.C. [§] 1391(a)." There are two problems here: 1) Plaintiff does not quote the holding or language from the majority opinion in *Goldlawr* but instead quotes a comment (presented under an asterisk) in Justice Harlan's dissenting opinion; and 2) the statute Justice Harlan

13

cited, § 1391(a), no longer contains the language he quoted. Further, the general venue statute, § 1391, does not contain language permitting a plaintiff in a diversity case to choose venue in the district where he resides. Plaintiff's reliance on *Goldlawr* is therefore misplaced.

Plaintiff's facts and evidence also do not satisfy the other two subsections of the general venue statute—§ 1391(b)(1), (3). Those provisions locate correct venue in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located …; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."

There is no indication in Plaintiff's facts and evidence that Defendant Grafilo or Marcroft resides in Ohio. Given their positions with, and legal representation of, the CDCA's Legal Affairs Division, it is doubtless they reside in California. Defendants acknowledge that Plaintiff could litigate this case in the Eastern District of California or in the California Superior Court in the County of Sacramento. (Doc. No. 9, PageID 197). Plaintiff presents no information or evidence that contradicts this. As a result, there is a district in California where this case may be brought, where Defendants reside, and where personal jurisdiction exists over them by virtue of their residence and work there.

Lastly, incorrect venue leads to a choice between two possible results: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be *in the interest of justice*, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). In the event the

14

Court finds that personal jurisdiction is lacking, further briefing may be warranted on whether it would be in the interests of justice to transfer venue of this case pursuant to § 1406.

**IT IS THEREFORE RECOMMENDED THAT**:

1. Plaintiff's Motion for Default Judgment (Doc. No. 14) be DENIED; and

2. Defendants Grafilo's and Marcroft's Motion to Dismiss (Doc. No. 9) Plaintiff's Complaint for lack of personal jurisdiction and improper venue be GRANTED and the case dismissed without prejudice.

September 14, 2020   *s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).